UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHADD LEATH, | ) | Case No.  5:09-CV-0741 |
| | ) | |
| Plaintiff, | ) | Judge Kathleen M. O'Malley |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Chadd Leath filed this appeal seeking judicial reversal under 42 U.S.C. §405(g) from the administrative denial of disability insurance benefits.  At issue is the ALJ's decision dated August 25, 2009, which stands as the final decision of the Commissioner. ("ALJ Decision")  *See* 20 C.F.R. §404.1481.   This matter has been referred for report and recommended disposition.

Mr. Leath was 35 years of age at the time of the administrative decision.  (Docket #12 at 1).  Mr. Leath claims that he suffers from diabetes, diabetic neuropathy, thoracic degenerative disc disease, herniated discs, headaches, gastrointestinal problems, generalized pain, depression/mood disorder,  (Tr. 488-491), post-traumatic stress disorder, pain disorder/chronic pain syndrome, and obesity (Docket #12 at 2).

After administrative hearing and *de novo* review, the ALJ, found that Mr. Leath "has the following severe impairments: myofacial pain syndrome, the residual effects of remote compression fractures at T11 and T12, obesity, and a major depressive disorder and a pain disorder." (Internal citations omitted) (Tr. 18).  The ALJ found that the Mr. Leath's major depressive disorder and pain disorder limit him moderately in three functional areas: (1) activities of daily living; (2) maintaining

2

social functioning; and (3) maintaining concentration, persistence, or pace. *Id.*  The ALJ also found

that, "Mr. Leath's diabetes is not a severe impairment" and there was no medical evidence to support

Mr. Leath's claim that "his diabetes resulted in diabetic neuropathy which causes more than minimal

limitations on his ability to perform basic work activities." (Tr. 19)  "[N]or is there medical evidence

of any other vocationally relevant consequence of his diabetes." *Id.*

      The ALJ also determined that Mr. Leath does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404,

Subpart P, Appendix 1[.]" *Id.*  Accordingly, the ALJ determined that Mr. Leath "retains the residual

functional capacity to do a range of sedentary work" and can "lift, carry, push and/or pull a

maximum of 10 pounds, can sit for 6 hours, and can stand and/or walk for 2 hours in an 8-hour work

day with normal breaks." *Id.*  The ALJ noted, however, that Mr. Leath is "limited to low-stress tasks

and is precluded from tasks requiring arbitration, negotiation, confrontation, directing the work of

others, and being responsible for the safety of others."  *Id.*  Finally, the ALJ determined that,

although Mr. Leath is "unable to perform any past relevant work, *** considering the claimant's

age, education, work experience, and residual functional capacity, the claimant has acquired work

skills from past relevant work that are transferable to other occupations with jobs existing in

significant numbers in the national economy."  (Tr. 22-23)  Such jobs include: appointment clerk,

order clerk, office clerk.  *Id.*

## I.      STANDARD OF REVIEW

      The issues before this court must be resolved under the standard whether there is substantial

evidence in the record to support the Commissioner's decision.  Substantial evidence is evidence

that a reasonable mind would accept as adequate to support the challenged conclusion.  *Casey v.*

3

*Secretary of Health & Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Wyatt v. Secretary*, 974 F.2d 680, 683 (6th Cir. 1992); *Born v. Secretary*, 923 F.2d 1168, 1173 (6th Cir. 1990); and *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (court may "not inquire whether the record could support a decision the other way").

## II.  SEQUENTIAL EVALUATION/MEETING OR EQUALING LISTING OF IMPAIRMENTS

The Commissioner follows a 5-step review process known as the sequential evaluation. This evaluation begins with the question whether the claimant is engaged in substantial gainful activity and then at the second step whether there is a medically severe impairment.  *See* §404.1520(a)(4)(I) and (ii) and §416.920(a)(4)(I) & (ii). At the third step of a disability evaluation sequence the issue is whether the claimant has an impairment which meets or equals a listed impairment from the Listing of Impairments of Appendix 1.  *See* 20 C.F.R. §404.1520(a)(iii) and (d); §416.920(a)(iii) and (d).  If an impairment exists which meets the description from the listing or is its equivalent, the claimant is deemed disabled at that point without consideration of age, education or prior work experience.  *See Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *Sullivan v. Zebley*, 493 U.S. 521, 532, (1990) (Once a claimant has met this burden that ". . . his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without determination whether he can perform his prior work or other work.")."At the fourth step of the sequential approach described in 20 C.F.R. §404.1520, it is the claimant's burden to show that [he] is unable to perform her previous type of work." *Dykes ex rel. Brymer v. Barnhart*, 112 Fed. Appx. 463, 467, 2004 WL 2297874, at *3 (6th Cir. 2004)); *Studaway v. Sect'y of Health and Human Services*, 815 F.2d 1074, 1076 (6th Cir. 1987). Once the administrative decision-maker determines that an individual cannot perform past relevant work, then the burden of going forward

4

shifts to the Commissioner at the fifth step to demonstrate the existence of types of employment compatible with the individual's disability.  *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Cole v. Secretary*, 820 F.2d 768, 771 (6th Cir. 1987); *Abbott v. Sullivan*, 905 F.2d 918, 926 (6th Cir. 1990); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391-92 (6th Cir. 1999).

### III.    LAW AND ARGUMENT

Mr. Leath alleges three errors by the ALJ: (1) "[t]he ALJ erred in failing to analyze or explain the weight given to the state disability consultants"; (2) "[t]he ALJ erred in devising a residual functional capacity which lacked the support of substantial evidence"; and (3) "[t]he ALJ erred in failing properly to evaluate Plaintiff's pain disorder."  (Docket #12).

Mr. Leath alleges that if the ALJ relied upon psychological consultant Roy Shapiro, Ph.D.'s evaluation, which was affirmed by another state psychological consultant, Cindy Lou Matyi, Ph.D., "then, a finding of disabled would follow."  (*Id.* at 4).  Moreover, as the ALJ "clearly explained that he did not give treating Dr. Bashor's opinion controlling weight[,] *** the ALJ was required by regulation to explain the weight he assigned the state opinions." *Id.*  Moreover, Mr. Leath states that the ALJ improperly failed to include "in his residual functional capacity any limitation in Plaintiff's frequency of interaction with others in a workplace setting" when both state consultants and Mr. Leath's treating physician stated that such limitation was required.  (*Id.* at 6).  Finally, Mr. Leath argues that the "ALJ improperly rejected Plaintiff's pain complaints as not credible or as inconsistent with objective findings" given that the ALJ accepted that Mr. Leath was diagnosed with a pain disorder. (*Id.* at 9).

5

1.    Physician Opinions

The ALJ determined treating physician, Dr. Bashor's [1] opinion that Mr. Leath is disabled was not supported by the evidence. (Tr. 22).  Mr. Leath does not challenge the ALJ's analysis in making this conclusion.  Mr. Leath argues, however, that because the ALJ did not give any weight to Dr. Bashor's opinion, he was required to explain the weight he gave to the opinions of consulting physicians Dr. Shapiro and Dr. Matyi [2] regarding Mr. Leath's mental residual functional capacity, which Mr. Leath contends would cause a finding of disabled.   (Docket #12 at 3-4).   Specifically, Mr. Leath argues that the ALJ's determination of Mr. Leath's residual functional capacity does not address Dr. Shapiro's recommendation that Mr. Leath's interactions with others should be limited and fails to explain why this recommendation was ignored.  (*Id.* at 6).

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician or psychologist, the administrative law judge will evaluate the findings using relevant factors in paragraphs (a) through (e) of this section, such as the physician's or psychologist's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations provided by the physician or psychologist, and any other factors relevant to the weighing of the opinions. Unless the treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(f)(2)(ii).

---

[1] Dr. Bashor was Mr. Leath's primary care physician.  Mr. Leath did not seek treatment from Dr. Bashor, or any other mental health provider for psychiatric problems after his initial evaluation at Akron General Medical Center. (Tr. 19). Thus, a treating psychiatrist did not offer an opinion in this case.

[2] Dr. Matyi affirmed Dr. Shapiro's August 8, 2005 report on January 2, 2006.

6

Mr. Leath acknowledges that the "ALJ acknowledged this state opinion in his recitation of the evidence and described Dr. Shapiro's residual functional capacity opinion accurately." Dr. Shapiro opined that Mr. Leath was moderately limited in his ability to: "carry out detailed instructions"; "complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; interact appropriately with the general public"; and "respond appropriately to changes in the work setting." (Tr. 355-56). Dr. Shapiro further stated that Mr. Leath was capable of performing "simple to moderately complex work tasks" that would require a "slower work pace" and no "strict production demands" and that "interactions with others should be limited as well." (Tr. 357).

The ALJ determined that based on the evidence before him, Mr. Leath could "lift, carry, push and/or pull a maximum of 10 pounds, can sit for 6 hours, and can stand and/or walk for 2 hours in an 8-hour work day with normal breaks." *Id*. The ALJ further determined that Mr. Leath is "limited to low-stress tasks and is precluded from tasks requiring arbitration, negotiation, confrontation, directing the work of others, and being responsible for the safety of others." The ALJ's determination demonstrates he relied upon and accepted Dr. Shapiro's opinion, including Dr. Shapiro's opinion that Mr. Leath's interactions with others should be limited; i.e., Mr. Leath should not interact with others by arbitrating or negotiating, confronting or directing the work of others.

The undersigned finds that not only did the ALJ properly explain the weight he gave to Dr. Shapiro's opinion, including Dr. Shapiro's "limited interaction" recommendation, Dr. Shapiro's opinion in its entirety and the other evidence presented, as discussed below, supports the ALJ's RFC finding.

7

2.      Credibility

Mr. Leath argues that it was error for the ALJ to acknowledge that Mr. Leath has a pain disorder yet find that Mr. Leath's complaints about pain were not credible.  Mr. Leath argues that the ALJ ignored the fact that, by definition, a person suffering from a pain disorder focuses "on actual pain[,] which may not correlate to underlying objective findings." (Docket #12 at 8).

Subjective complaints can support a claim for disability, if there is also objective medical evidence of an underlying medical condition in the record. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 150-51 (6th Cir.1990); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852 (6th Cir.1986).  An ALJ is not required, however, to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability. *See Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).  "Upon judicial review, the court must accord the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which the court does not, of observing a witness's demeanor while testifying." *Walczak v. Commissioner of Social Sec.,* 2005 WL 474539 (N.D. Ohio 2005) (Armstrong, J.), *citing Jones v. Commissioner of Social Security*, 336 F.3d 469, 476 (6th Cir.2003), *citing Walters*, 127 F.3d. at 528..  "The court is limited to evaluating whether the ALJ's explanations for partially discrediting the claimant are reasonable and supported by substantial evidence in the record.  *Id.*

SSR 96-7p outlines the administrative evaluation process beginning with traditional two-prong *Duncan* pain analysis plus the additional regulatory considerations under 20 C.F.R.

8

§404.1529(c)(3) and §416.929(c)(3).  *See Duncan v. Sec'y of Health & Human Services*, 801 F.2d

847, 853 (6thCir. 1986); *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007).

Under the two-prong  pain analysis, there first must be a determination whether there exists

an underlying medically determinable physical or mental impairment followed by the question

whether the impairment would be reasonably expected to produce the individual's pain or other

symptoms. SSR 96-7p, 1996 WL 374186 at *2. The second question then is the reasonableness of

the alleged debilitating pain or symptoms. The mandated considerations require the ALJ to

investigate subjective complaints of pain or other symptoms based on:

1.     The claimant's daily activities;

2.     The location, duration, frequency,  and intensity of pain;

3.     Precipitating and aggravating factors;

4.     The type, dosage, effectiveness, and side-effects of medication to alleviate
       pain or other symptoms;

5.     Treatment, other than medication claimant has received for relief of pain; and

6.     Any other measures used to relieve pain (e.g. lying down or changing
       position).

7.     Other factors concerning functional limitations and restrictions due to pain
       or other symptoms.

*See* SSR 96-7p, 1996 WL 374186 at *2; 20 C.F.R. §404.1529(c)(3)(i-vii); §416.929(c)(3)(i-vii).

Here, the ALJ provided a recitation of Mr. Leath's reported symptoms and stated:

After considering the evidence, I find that Mr. Leath's medically determinable
impairments could reasonably be expected to produce the alleged symptoms but that
his statements concerning the intensity, persistence and limiting effects of these
symptoms are not credible to the extent they are inconsistent with the residual
functional capacity assessment.

(Tr. 19)

9

> In sum, the above residual functional capacity assessment is supported by the medical evidence of record.  Although Mr. Leath has a long history of seeking treatment for pain, there is little evidence to support that Mr. Leath's pain limits him to the extent he claims.  Likewise, the medical evidence of record shows a history of depression and a pain disorder, and yet he has not sought formal mental health treatment.

(Tr. 22).

The ALJ explained his reasoning by noting that: (1) "[a]n MRI of his thoracic spine on May 27, 2004 revealed only 'minimal' ventral wedging at the t11 and t12 levels[,] [a]nother thoracic MRI on November 22, 2004 was read as being within normal limits[,] * * * [and] [a]n MRI of his lumbar spine on November 22, 2004 was also read as being within normal limits"; (2) an MRI of Mr. Leath's cervical spine on May 27, 2004, revealed a herniation with a "'moderate' mass effect on the thecal sack, spinal cord, and neural foramina [and] *** a 'mild' disc bulge at C6-C7 that caused 'mild' canal narrowing *** [but the] 'spinal cord retains normal signal'"; (3) "[a]nother cervical MRI on November 22, 2004 showed that the C5-C6 herniation had decreased since May 27, 2004 *** [and] the 'spinal cord contour and signal intensity [were] within normal limits'"; (4) Dr. Friedman, a neurologist, "noted on June 17, 2004 that the MRI's of Mr. Leath's cervical and thoracic spine 'did [not] show anything significant'"; (5) an EMG on May 19, 2004 of Mr. Leath's left upper extremity were normal and Mr. Leath "was not cooperative with an EMG of his left lower extremity and so the evaluation was terminated"; (6) in May 2005, "Mr. Leath rated his pain as a 5 out of 10 [and] [b]y the end of May 2005, Mr. Leath felt he was improving;" (7) Mr. Leath did not return to Dr. Felden, a pain management specialist, until February of 2007 at which time he "rated his pain as a 2 out of 10."  (Tr. 20-21).

The ALJ further stated that:

> Mr. Leath's credibility about his being disabled is reduced by the following: Some of his alleged limitations may be the result of deconditioning, as noted at a physical therapy appointment on July 6, 2004, rather than the result of his impairments.  He

10

has not followed up with psychiatric treatment.  He is able to attend college, albeit remotely via the internet.

(Tr. 20).

With regard to Dr. Bashor's August 15, 2005 opinion that Mr. Leath was incapacitated by pain, and unable to sit, stand or walk continuously without pain, the ALJ noted:

> "To the extent that it is read as saying that Mr. Leath is disabled, Dr. Bashor's opinion is not supported by the evidence.  Mr. Leath first sought treatment from Dr. Bashor's office in June 2004.  Dr. Bashor's notes contain no evaluation of Mr. Leath's ability to sit, stand or walk.  On June 30, 2005, the most recent appointment at the time the opinion was rendered, Mr. Leath was being treated for blisters and depression.  No observations were made regarding Mr. Leath's gait or range of movement[.]"

(Tr. 22)

Merely being diagnosed with a condition "says nothing about the severity of the condition" and it was Mr. Leath's burden to establish the severity of his impairments. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  In *Long v. Apfel*, 1 Fed.Appx. 326, 331-32 (6th Cir. 2001), it was stated:

> Caselaw since *Higgs* confirms this circuit's practice in that respect. Compare *Maloney v. Apfel*, 211 F.3d 1269 (table), No. 99-3081, 2000 WL 420700 at *2, (6th Cir.2000) (per curiam) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); and *Foster v. Secretary of Health & Human Svcs.*, 899 F.2d 1221 (table). No. 88-1644, 1990 WL 41835 at *2 (6th Cir.1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); with *Burton v. Apfel*, 208 F.3d 212 (table), No. 98- 4198. 2000 WL 125853 at *3 (6th Cir.2000) (reversing finding of no severe impairment because record contained diagnoses and remarks from a number of treating physicians and psychologists to the effect that claimant was "'unable to work ... due to the complexity of her health problems'" (quoting physician)); and *Childrey v. Chater*, 91 F.3d 143 (table). No. 95-1353, 1996 WL 420265 at *2 (6th Cir.1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "'not yet able to really care for herself alone,'" reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).

11

Here, the only doctor that opined as to the severity of Mr. Leath's pain disorder was Dr. Bashor whose opinion was properly analyzed and discounted by the ALJ.  There is no evidence as to the severity of Mr. Leath's pain disorder. An ALJ need not refer specifically to Social Security Rulings.  *McClanahan v. Comm'r of Soc. Sec*. 474 F.3d 830, 835 (6th Cir. 2006).   What matters is whether the ALJ conducts the analysis required by the rulings. *Id.*   The ALJ's reasoning demonstrates that he conducted the proper analysis and his decision is  "sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Rogers*, 486 F.3d at 248, *citing Hurst v. Secretary of Health & Human Services*, 753 F.2d 517, 519 (6th Cir.1985).

Because the ALJ properly articulated his reasons for rejecting plaintiff's subjective claims regarding his limitations, and because the ALJ's reasons are supported by the record, the ALJ's finding on credibility is entitled to deference.  *See Walczak, supra; Casey v. Secretary of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir.1993) (per curiam); *see also Hardaway v. Secretary of Health & Human Servs.*, 823 F.2d 922, 927-28 (6th Cir.1987) (per curiam); *Houston v. Secretary of Health & Human Servs*., 736 F.2d 365, 367 (6th Cir.1984).  Accordingly, the ALJ's assessment of Mr. Leath's credibility, conducted in accordance with administrative regulatory procedures, was supported by substantial evidence.

12

### III.    CONCLUSION

Based on the arguments presented, the record in this matter and applicable law, the undersigned recommends that the Commissioner's decision denying disability insurance benefits be affirmed as supported by substantial evidence.


                                        /s/James S. Gallas
                                    United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).



Dated: March 24, 2010